# James W. Kelly, Plff. in Err., v. Baltimore & Ohio Railroad Company.

A master is not responsible to his servant for an injury the cause of which was open, permanent, and visible in its character, and of which the servant assumed the risk when he entered the master's service, nor for an injury which was the result of the servant's own negligence.

*So held*, in regard to an injury to a brakeman, caused by his being caught between a building of the company standing near the track and a car, while coming down from the top of the car, he being familiar with the location of the building and the track, and the injury occurring in the daytime.

(Argued November 3, 1887. Decided November 11, 1887.)

Cited in Boyd v. Harris, 176 Pa. 484, 48°, 38 W. N. C. 399, 35 Atl. 222.

NOTE.—The rule that the employee is bound to take notice of obstructions too close to the track, when he has had opportunity to learn of them, and that he cannot recover for injuries resulting therefrom, has been uniform. Boyd v. Harris, 176 Pa. 484, 38 W. N. C. 399, 35 Atl. 222; Fulford v. Lehigh Valley R. Co. 185 Pa. 329, 39 Atl. 1115; Brossman v. Lehigh Valley R. Co. 113 Pa. 490, 57 Am. Rep. 479, 6 Atl. 226; Pittsburgh & C. R. Co. v. Sentmeyer, 92 Pa. 276, 37 Am. Rep. 684. But the question is for the jury, where the employee was not acquainted with the obstruction, having had no chance to learn of it. Vorhees v. Lake Shore & M. S. R. Co. 193 Pa. 115, 44 Atl. 335.

See the following editorial notes presenting the authorities as to various phases of the doctrine of assumption of risk: Assumption of risk by servants in general, notes to Georgia P. R. Co. v. Dooly, 12 L. R. A. 342; Kehler

October Term, 1887, No. 213, before GORDON, Ch. J., PAX-
SON, STERRETT, and WILLIAMS, JJ.   Error to the Common
Pleas No. 1 of Allegheny County to review a judgment of com-
pulsory nonsuit in an action on the case, to recover damages for
a personal injury.   Affirmed.

At the trial the plaintiff testified as a witness in his own be-
half, that in the early spring or winter of 1885 and 1886 he
was in the employ of the defendant company as a brakeman;
that he was employed part of the time to work as extra man,
but that five and a half months previous to the injury he worked
on the upper shift in the Connellsville yard; that he received the
injury March 24, 1886, in the Connellsville lower yard, and
between a car and the oil house (a building used for storing oil
used by the railroad company) on the oil-house track, while he
was braking. "We had two cars to put in on that track.   I
threw the main track switch on the oil-house track and let the
engine and cars go past me in order to get the two cars in on the
oil-house track, and while the cars were passing me, a man
by the name of Snyder, then braking, said to me that he didn't
believe the other brakeman, whose name was Felton, was on top
of the cars.   Finding that this man was not on top of those cars
to ride them when the cars were cut, I got up in order to ride
them in, and in getting up I found Snyder had got up too, and
I was in the act of getting down to throw the switch to let the
engine out on the main track when I was caught between the
oil house and the car;" that he was caught between the building
and the car while coming down from the top of the car by the
ladder at the end of the car, while his right foot was on the
bumper of the car, and the left foot on the stirrup and his left
hand holding on the side of the car; that the hand-hold and

v. Schwenk, 13 L. R. A. 374; of danger of electric shock, note to Western
U. Teleg. Co. v. McMullen, 32 L. R. A. 351; when risks outside scope of
employment deemed to be assumed, note to Olson v. Minneapolis & St. L.
R. Co. 48 L. R. A. 803; assumption by volunteer of the risks of service,
note to Evarts v. St. Paul, M. & M. R. Co. 22 L. R. A. 663; *volenti non fit
injuria* as a defense to actions by injured servants, note to O'Maley v. South
Boston Gaslight Co. 47 L. R. A. 161; effect of assurance of safety given by
the master or a coservant, note to McKee v. Tourtelotte, 48 L. R. A. 542;
the rights of a servant who continues work on the faith of his master's
promise to remove a specific cause of danger, note to Illinois Steel Co. v.
Mann, 40 L. R. A. 781.

stirrup were on the side of the car; that he was rolled between the oil house and the car for the length of one car, and dropped and was caught by the car journal boxes, and was injured. On cross-examination he testified that he was familiar with the yard when the accident occurred "so far as any man might be to get a slight glimpse of it;" that the accident occurred in the daytime, and that the location of the switch track and building were visible to him; that when he commenced descending the car the oil house was probably 20 feet distant, and that he descended with his face to the car and his back to the oil house; that he had worked in the yard in which the accident occurred. On redirect examination he testified that he had been detailed to work on the lower yard shift (the yard in which the accident occurred) on the day of the accident.

Witnesses for the plaintiff testified that the clear space between the car and the oil house was about 8 inches, the space from the rail to the house being about 2½ feet.

In the course of the trial plaintiff's counsel put this question to Irwin McCutcheon, a witness for plaintiff:

"Have you any knowledge of what effect the running of cars had on the relative positions of the rail and the oil house?"

Objected to as immaterial and irrelevant, and objection sustained.[1]

The plaintiff's counsel put this question to the plaintiff, called as a witness in his own behalf:

"Do you know the rule of the company in regard to clearance of main tracks and side tracks, the distance within which obstructions cannot be piled or put along the track?"

Objected to as immaterial and irrelevant, and objection sustained.[2]

The plaintiff's counsel also put the following question to the plaintiff:

"Did you know the distance or position of this house with relation to the track of the defendant company, before the time of this accident?"

Objected to as incompetent and irrelevant, and for the further reason that the witness was examined on the same matter when on the stand before.

By the court: "The witness has shown general knowledge of the position, but we think the evidence at all events is incompetent and the objection is sustained."[3]

At the close of plaintiff's case, defendant (on May 2, 1887) moved the court to order a judgment of nonsuit, for the following reasons:

1. That under the plaintiff's own testimony the cause of the injury was one which was open, permanent, and visible in its character, and of which the plaintiff assumed the risk when he entered the defendant's service in the capacity in which he was employed.

2. The injury was the result of the plaintiff's own negligence in not paying proper attention to the risk which he incurred in the performance of the act in which he was engaged at the time of the injury.

Nonsuit granted, with leave to move the court in banc to take it off, which motion was subsequently made and denied; whereupon plaintiff took this writ, specifying as assignments of error: (1–3) The action of the court in overruling the questions to witnesses above stated and indicated by exponents; (4) the granting of the compulsory nonsuit; and (5) the refusal to take off the judgment of nonsuit.

*D. A. Ewing, Edward Campbell,* and *Thomas Patterson,* for plaintiff in error.—The first question to be considered is: Was the defendant company negligent in placing the oil house so close to the rails as to render the operation of trains a dangerous one to the men employed? Upon this point the courts have taken a distinction between those obstructions over which the railroad company has no control, and those which are so placed by their own act. See Patterson, Railway Accident Law, § 289.

Where a railroad company negligently plans an obstruction over its road way, dangerous to the lives of its employees, it fails in its duty to them; and, therefore, if a person enters the service of the company, in ignorance of such danger, and remains ignorant thereof until injured or killed by it, the company is liable for damages. Brossman v. Lehigh Valley R. Co. 113 Pa. 490, 57 Am. Rep. 479, 6 Atl. 226.

Where a railroad company voluntarily subjects its employees to dangers which it ought to provide against, and an accident happens to an employee from a want of proper provision against such dangers, the company is undoubtedly liable. Pittsburgh & C. R. Co. v. Sentmeyer, 92 Pa. 276, 37 Am. Rep. 684. See

also Patterson v. Pittsburg & C. R. Co. 76 Pa. 389, 18 Am. Rep. 412.

The burden of showing contributory negligence is upon the defendants; and unless it be clearly disclosed in the plaintiff's case the question is for the jury. Mallory v. Griffey, 85 Pa. 275.

If regulations are not part of the contract, then they create no duty on the part of the master, and impose no obligations on the part of the employee. Pennsylvania Co. v. Whitcomb, 111 Ind. 212, 12 N. E. 380.

As a matter of contract, and also as bearing on the alleged contributory negligence of plaintiff, we submit that we were entitled to ask his knowledge of the rule. Also, the question embraced in the first assignment, we submit, was relevant.

If the running of cars had caused the rail to sink towards the oil house, thus bringing the cars close to it, we were entitled to know it, particularly in view of the fact that after the injury the defendants caused the rail to be raised and straightened.

In conclusion we submit that the case is governed by that of Rummell v. Dilworth, P. & Co. 111 Pa. 343, 2 Atl. 355, 363. In that case Mr. Justice CLARK says:

"Actual experiment only, therefore, could fully disclose to the plaintiff the degree of peril he assumed. . . . The plaintiff cannot be supposed or assumed to have accepted in advance a peril which he could not estimate, and the extent of which for the lack of experience he could not have known. Where there is any doubt whether the employee was acquainted or ought to have been acquainted with the risk, the determination of the question is necessarily for the jury." See also Snow v. Housatonic R. Co. 8 Allen, 441, 85 Am. Dec. 720.

*Johns McCleave,* for defendant in error.—It clearly appears that the plaintiff knew, or at least had every opportunity of observing and becoming acquainted with, the relative positions of the oil house and the tracks; the oil house was a structure of considerable size; the danger arising from any attempt to throw one's self between it, and a car moving upon the track, 2½ feet from it, was surely an open, patent danger, and permanent in character; not concealed, temporary, or difficult to observe. No fine, technical skill or knowledge was necessary to make one see and appreciate such a risk. Under these circumstances it is well

settled that there can be no recovery. Pittsburgh & C. R. Co. v. Sentmeyer, 92 Pa. 276, 37 Am. Rep. 684; Baltimore & O. R. Co. v. Stricker, 51 Md. 47, 34 Am. Rep. 291; Clark v. Richmond & D. R. Co. 78 Va. 709, 49 Am. Rep. 394; Owen v. New York C. R. Co. 1 Lans. 108; Gibson v. Erie R. Co. 63 N. Y. 450, 20 Am. Rep. 552.

In Lovejoy v. Boston & L. R. Corp. 125 Mass. 79, 28 Am. Rep. 206, where the plaintiff had been injured by a signal post standing very close to the side of the track, the court held: "The defendant had the right to construct its road, conduct its business, in this manner, and, as was said in Ladd v. New Bedford R. Co. 119 Mass. 412, 20 Am. Rep. 331: 'Is not liable to one of its servants who is capable of contracting for himself, and knows the danger attending the business in the manner in which it is conducted for an injury resulting therefrom.'" See also Brossman v. Lehigh Valley R. Co. 113 Pa. 490, 57 Am. Rep. 479, 6 Atl. 226.


PER CURIAM.

The nonsuit in this case was properly ordered for the reasons assigned in the defendant's motion of May 2, 1887.

The judgment affirmed.